**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | |
|---|---|
| UNITED STATES OF AMERICA, *Plaintiff,* v. VINCE HANCOCK, *Defendant.* | No. 3:12-cr-00015 (VAB) |

**RULING AND ORDER ON MOTION FOR COMPASSIONATE RELEASE**

Vince Hancock ("Defendant") has moved for compassionate release under 18 U.S.C. § 3582(c)(1)(A)(i). Mot. for Sentence Reduction Under 18 U.S.C. § 3582(c)(1)(A)(i) and the First Step Act, ECF No. 54 (Dec. 15, 2020) ("Def.'s Mot."); Mem. in Suppl. of Mot. for Sentence Reduction Under 18 U.S.C. § 3582(c)(1)(A)(i) and Section 603 of the First Step Act, ECF No. 50 (Dec. 15, 2020) ("Def.'s Mem.").

The United States (the "Government") opposes his motion. Gov't Resp. to Def.'s Mot. for Compassionate Release, ECF No. 57 (Dec. 22, 2020) ("Gov't Opp'n").

For the reasons set forth below, Mr. Hancock's motion for compassionate release is **GRANTED**.

Mr. Hancock's term of imprisonment is reduced to **TIME SERVED**, followed by a period of three (3) years of supervised release, to be served in home incarceration for thirty (30) days, after which, if successfully completed, he may be eligible for home detention or curfew, until **January 29, 2022**. Mr. Hancock shall be released from Bureau of Prisons custody by **January 13, 2021**, in accordance with the terms of this Order.

## I. BACKGROUND

On January 18, 2012, a grand jury returned a nine-count indictment against Mr. Hancock, charging him with possession with intent to distribute and distribution of cocaine base and heroin, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(C); possession with intent to distribute and distribution of heroin, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(C); unlawful possession of a firearm by a convicted felon, in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2); possession with intent to distribute cocaine base, cocaine, and heroin, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(C; and possession of a firearm in furtherance of a drug trafficking crime, in violation of 18 U.S.C. § 924(c)(1)(A). Indictment, ECF No. 1 (Jan. 18, 2012).

On March 14, 2012, Mr. Hancock pled guilty to Count Four of the Indictment, charging him with possession with intent to distribute and distribution of cocaine base and heroin in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(C). Plea Agreement, ECF No. 17 (Mar. 14, 2012).

On September 4, 2012, the Honorable Vanessa L. Bryant sentenced Mr. Hancock to a term of imprisonment of 151 months, a term of three years of supervised release, anda special assessment of $100. J., ECF No. 31 (Sept. 6, 2012).

On December 15, 2020, Mr. Hancock moved for compassionate release under 18 U.S.C. § 3582(c)(1)(A). Def,'s Mot; Def.'s Mem.

On December 22, 2020, the Government opposed Mr. Hancock's motion. Gov't Opp'n.

On January 7, 2021, this Court held a hearing by videoconference. Min. Entry, ECF No. 59 (Jan. 7, 2021).

## II. STANDARD OF REVIEW

A court may modify a term of imprisonment on compassionate release grounds in two circumstances: (1) "upon motion of the Director of the Bureau of Prisons [("BOP")];" or (2) "upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier . . ." 18 U.S.C. § 3582(c)(1)(A); *see also United States v. Gotti,* 433 F. Supp. 3d 613, 614 (S.D.N.Y. 2020) ("In December 2018, as part of the First Step Act, Congress worked a change to th[e] rule of long standing" that a court could only modify a sentence upon motion from the Bureau of Prisons. "A court may now consider a motion for compassionate release made by a defendant who has exhausted his administrative remedies by petitioning the Director of the BOP to make such a motion, assuming the Director fails to act on the inmate's request within thirty days.").

A court may only grant such a modification if it finds that "extraordinary and compelling reasons warrant" release. 18 U.S.C. § 3582(c)(1)(A). In determining whether to grant a motion to modify a sentence, a court must also consider the factors set forth in 18 U.S.C. § 3553(a). 18 U.S.C. § 3582(c)(1)(A).

## III. DISCUSSION

Section 3582(c)(1)(A) authorizes courts "to consider the full slate of extraordinary and compelling reasons that an imprisoned person might bring before [the court] in motions for compassionate release." *United States v. Brooker*, 976 F.3d 228, 237 (2d Cir. 2020) ("Neither Application Note 1(D), nor anything else in the now-outdated version of Guideline § 1B1.13, limits the district court's discretion."); *see United States v. Gonzalez,* No. 3:15-cr-00223 (MPS), 2020 WL 5793304, at *1 (D. Conn. Sept. 29, 2020) (slip op.) ("[B]ecause [Mr.] Gonzalez – and not the

[BOP] – brings the instant motion, [the Court is] not bound by the Sentencing Commission's outdated policy statement applicable to Section 3582(c)(1)(A) . . . , which the Second Circuit recognized as only applying to motions for sentence reduction brought by the BOP.") (citing *Brooker*, 976 F.3d at 230) (internal citations omitted).

With respect to "extraordinary and compelling reasons," Mr. Hancock moves the Court to grant his motion for compassionate release because his high body mass index ("BMI") and hypertension "place him at heightened risk for severe illness or death should he contract COVID-19." Def.'s Mem. at 8. Mr. Hancock also argues that he is "unable to take the unnecessary precautions to safeguard himself against infection" of COVID-19 pandemic at the facility where he is housed, FCI Fort Dix. *Id*. at 12 (emphasis omitted). Counsel for Mr. Hancock also noted, at oral argument, that though Mr. Hancock's motion states that, at the time of filing, there were 15 active inmate cases and 45 active staff cases of COVID-19 at FCI Fort Dix, *id.*, these cases had since increased; indeed, as of January 8, 2021, there were 789 positive inmate cases, and 23 positive staff cases, at the facility, *see* Bureau of Prisons, *COVID-19 Coronavirus*, https://www.bop.gov/coronavirus (last visited Jan. 8, 2021).

With respect to the § 3553(a) factors, Mr. Hancock argues that the COVID-19 pandemic has made Mr. Hancock's sentence more punitive than needed, as inmates like Mr. Hancock face "lockdown conditions, cold meals, and drastically reduced recreational time, programming, and employment and educational opportunities." Def.'s Mem. at 13. He argues that the Eighth Amendment weighs in favor of release, because his chances of receiving quality medical care in the event that he contracts COVID-19 are greater upon release than when in BOP custody. *Id*. at 16. Mr. Hancock also argues that his "exemplary record in the BOP," including a record of "treatment, counseling, and [participation in] . . . multiple classes" has prepared him to "better

himself upon release." *Id.* at 15. He similarly argues that he is "unlikely to recidivate, given his current age, accomplishments in prison, and strong release plan." *Id.* at 17 (emphasis omitted). Finally, he suggests that he has demonstrated he is not a danger to the community under 18 U.S.C. § 3142(g) because he has "maintained an excellent disciplinary record, and has engaged in programming and counseling," during his time in federal prison. *Id.* at 20. He proposes that, on release, he would reside with his childhood friend, Duane Davis, who Mr. Hancock represents is committed to helping Mr. Hancock obtain employment. *Id.* at 21.

The Government opposes Mr. Hancock's motion. Gov't Opp'n. The Government argues that "[a] close inspection of [Mr.] Hancock's two identified medical conditions," obesity and hypertension, "reveals no extraordinary and compelling reasons warranting compassionate release." *Id.* at 7. Specifically, the Government argues that Mr. Hancock's most recent recorded weight places him in the "overweight" category, rather than the "obesity" category, which puts him only, at most, at the possibility of increased risk should he contracted COVID-19. *Id.* at 7-8. The Government also argues that Mr. Hancock's blood pressure readings have been inconsistent, and "fell with the introduction of medication," but "increased again in the most recent reading," which again shows only that, at most, he "might be at an increased risk" for severe illness should he contract COVID-19. *Id.* at 9-10.

The Government also acknowledges Mr. Hancock's "completion of several educational and drug treatment programs," but notes that on April 19, 2018, Mr. Hancock was issued a ticket for possessing a hazardous tool in prison. *Id.* at 11. As the Government argues, under Second Circuit precedent, even his general compliance with prison regulations "has no bearing on the sentencing factors a court must consider under 18 U.S.C. § 3553(a)," but "continued disrespect of the rules would suggest a greater need to protect the public from further crimes and to deter future

criminal conduct." *Id.* at 11-12 (citing *United States v. Mumuni*, 946 F.3d 97, 112 (2d Cir. 2019)). The Government notes that at sentencing, Judge Bryant observed that Mr. Hancock had "repeated[ly] violat[ed] . . . the law," and that he committed his offense of conviction "while on probation," which "suggests a very high degree of recidivism" and a need "to protect the public." *Id.* at 13 (quoting Sentencing Tr., ECF No. 37 (Nov. 5, 2012)). In the Government's view, Mr. Hancock still poses a "continued risk of recidivism" because, after a 2007 offense that led to him sustaining state "convictions for drug trafficking and firearms possession," he "returned to the very same conduct a short time after his release . . . and while still on state probation." *Id.* at 12.

With respect to Mr. Hancock's release plan, the Government argues that though Mr. Davis appears "committed to helping [Mr.] Hancock find employment . . . , there does not appear to be a job waiting for [Mr.] Hancock upon his release," and Mr. Hancock "engaged in serious prior criminal conduct notwithstanding this friendship." *Id.* at 12-13.

The Court will address each of the relevant factors in turn.

**1. Exhaustion**

Normally, under 18 U.S.C. § 3582(c)(1)(A), a court may not modify or reduce a defendant's sentence on that defendant's motion when the defendant has not exhausted his administrative remedies by either (1) appealing a failure of the BOP to bring such a motion on the defendant's behalf or (2) the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility.

The parties do not dispute that the exhaustion requirement has been met. *See* Def.'s Mem. at 21; Gov't Opp'n at 6-7. On May 26, 2020, Mr. Hancock submitted a request for compassionate release to the Warden at FCI Fort Dix. Request to Warden, Ex. A, ECF No. 50-1 (Dec. 15, 2020). He never received a response. Def.'s Mem. at 21; Gov't Opp'n at 6-7. As more than thirty days

have passed since Mr. Hancock submitted his request to the Warden, the exhaustion requirement has been satisfied and Mr. Hancock's motion is properly before the Court.

**2. Extraordinary and Compelling Reasons**

Since the outbreak of the COVID-19 pandemic, numerous courts within this Circuit have held that a defendant's pre-existing health conditions in combination with the increased risks of COVID-19 in prisons constitute "extraordinary and compelling reasons" warranting relief. *See, e.g.*, *United States v. Delgado*, 457 F. Supp. 3d 85, 89 (D. Conn. Apr. 30, 2020) (granting compassionate release where the defendant had a BMI of 40.2, finding that his "severe obesity and sleep apnea put him at increased risk should he contract COVID-19"); *United States v. Daugerdas*, -- F. Supp. 3d --, 2020 WL 2097653, at *3 (S.D.N.Y. 2020) (defendant serving a 180-month term of imprisonment and incarcerated at a facility with no reported cases of COVID-19; the district court found that his underlying health conditions—Type II diabetes, obesity, hypertension, and high cholesterol—and the risk of COVID-19 in prisons generally constituted an extraordinary and compelling reason, but did not ultimately grant compassionate release); *United States v. Morales*, No. 3:19-cr-121 (KAD), 2020 WL 2097630, at *3 (D. Conn. May 1, 2020) (slip op.) (recognizing district courts have found that "[a]sthma is a condition that places a person at increased risk for serious complications, or even death, if the person contracts COVID-19[,]" and "creates a[n] extraordinary and compelling reason for sentence reduction"); *United States v. McCarthy*, 453 F. Supp. 3d 520, 527 (D. Conn. 2020) ("[Mr.] McCarthy is 65 years old and suffers from COPD, asthma, and other lung-related ailments . . . . The defendant's age and medical condition, taken in concert with the COVID-19 public health crisis, constitute an extraordinary and compelling reason to reduce [Mr.] McCarthy's sentence.").

Mr. Hancock argues that "a combination of factors, including [his] medical vulnerability

to COVID-19, the pandemic's effects on his conditions of confinement, [and] his extraordinary rehabilitation during 9 years in prison," as well as "the length of time he has already served," constitute extraordinary and compelling reasons warranting release. Def.'s Mem. at 4. Specifically, he argues that his BMI is above 25, "which makes him overweight," and, "in combination with his hypertension," puts him "at an increased risk of becoming severely ill should he contract COVID-19." *Id*. at 8-9.

The Government does not dispute that Mr. Hancock's "highest identified BMI" is 25.1, but argues that this "just falls within the overweight category and . . . falls far short of the obesity category," which means that, at most, under the Centers for Disease Control and Prevention ("CDC") guidelines, he "might be at an increased risk." Gov't Opp'n at 8. The Government also argues that though the BOP medical records "note a history of hypertension and regularly assess [Mr. Hancock] with 'essential (primary) hypertension,'" *id*. at 9 (quoting Medical Records, Ex. C, ECF No. 53 at 15, 17, 23, 28, 33 (Dec. 15, 2020)), his readings since June 26, 2020, show both hypertensive, as well as prehypertensive and normal, readings as defined by the CDC, *id*. at 9-10 (citing CDC, *High Blood Pressure Symptoms and Causes*, https://www.cdc.gov/bloodpressure/about.htm). The Government argues that this shows that his blood pressure readings "fell with the introduction of medication," but "increased again in the most recent reading," which "indicates prehypertension or hypertension (depending on which guideline is used)." *Id*. at 10. Accordingly, and because the CDC has indicated that people with hypertension "might be at an increased risk for severe illness from . . . COVID-19," Mr. Hancock's motion indicates only, at most, that he "might be" at this increased risk. *Id*. (internal quotation marks omitted).

As many courts in this District have recognized, the CDC guidelines make clear that

obesity places defendants at heightened risk of severe complications were they to contract COVID-19. *See, e.g.*, *United States v. Newton*, No. 3:18-cr-0022-8 (VLB), 2020 WL 6784267, at *5 (D. Conn. Nov. 18, 2020) ("The Court acknowledges that Mr. Newton's obesity, which is marginal, places him at a heightened risk of severe complications were he to contract the virus."); *United States v. Davila*, No. 16-cr-00185 (MPS), 2020 WL 6499562, at *2 (D. Conn. Nov. 5, 2020) ("As the Government concedes, . . . [the defendant's] obesity places him at increased risk of severe illness from COVID-19 under the CDC guidelines."); *see also People With Certain Medical Conditions*, CDC, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last updated Dec. 29, 2020) (listing "obesity (body mass index [BMI] of 30 kg/m2 or higher but < 40 kg/m2)" as a condition that puts "[a]dults of any age . . . at increased risk of severe illness from the virus that causes COVID-19").

Mr. Hancock, however, is not obese; he instead qualifies as "overweight," which the CDC has concluded "might" put him at increased risk of suffering severe illness should he contract COVID-19. *See id.* (classifying "[o]verweight (BMI > 25 kg/m2, but < 30 kg/m2)" as a condition that means "adults of any age . . . might be at an increased risk for severe illness from the virus that causes COVID-19"). Some courts in this District, and others within this Circuit, have concluded that merely being "overweight" does not qualify as an extraordinary and compelling circumstance warranting release. *See, e.g.*, *United States v. Peralta*, No. 19-cr-135 (VEC), 2020 WL 6683095, at *2 (S.D.N.Y. Nov. 12, 2020) ("[A]bsent any additional comorbidities and considering that he is only 28 years old, Mr. Peralta cannot establish extraordinary and compelling reasons justifying compassionate release solely on being overweight."); *United States v. Broadus*, No. 17-cr-787-2 (RJS), 2020 WL 3001040, at *2 (S.D.N.Y. June 4, 2020) ("[T]he mere allegation that one is overweight, in prison, and that there is a COVID-19 outbreak nationwide is not

sufficiently extraordinary and compelling to justify early release.") (internal quotation marks and alteration omitted); *United States v. Harding*, No. 3:14-cr-226 (MPS), 2020 WL 2988955 at *3 (D. Conn. June 4, 2020) (slip op.) (finding that a movant with a BMI of 29.4 was classified as "overweight" and therefore he "d[id] not have one of the underlying health conditions that the CDC has identified as being high risk"). This Court, however, has previously granted compassionate release even where a movant's "body mass index [wa]s not high enough to create the highest risk," where the individual also had hypertension and the individual's age, 58, "magnifie[d] the risk." *United States v. Foreman*, No. 19-cr-62 (VAB), 2020 WL 2315908, at *4 (D. Conn. May 11, 2020) (slip op.)

As to Mr. Hancock's hypertension, the Court recognizes as an initial matter that there exist factual disputes between the parties as to whether Mr. Hancock's blood pressure readings, particularly those indicating that medication may be effective at managing his hypertension, put him at increased risk of severe illness were he to contract COVID-19. *See* Def.'s Mem. at 10-11; Gov't Opp'n at 9-10.

Courts in this District, and other courts in this Circuit, have held that hypertension, combined with the COVID-19 pandemic, may constitute extraordinary and compelling reasons for release. *See United States v. Sedge*, No. 16-cr-537 (KAM), 2020 WL 2475071, at *3 (E.D.N.Y. May 13, 2020) ("Given that the defendant is over 50 and has demonstrated existing medical conditions that would place him into a high-risk category including hypertension, hyperlipidemia, and coronary artery disease, defendant has demonstrated that he is at a higher risk for suffering life threatening complications from COVID-19."); *United States v. Pena*, 459 F. Supp. 3d 544, No. 15-cr-551 (AJN), 2020 WL 2301199, at *4 (S.D.N.Y. May 8, 2020) (defendant had hypertension and hyperlipidemia, and the district court recognized the heightened risk

hypertension poses); *United States v. Scparta*, -- F. Supp. 3d --, No. 18-cr-578 (AJN), 2020 WL 1910481, at *9 (S.D.N.Y. Apr. 20, 2020) (defendant suffered from "hypertension, sleep apnea, high blood pressure, and high cholesterol" and the court recognized that the CDC "has identified hypertension as a comorbidity that increase the likelihood of serious risk from COVID-19"); *United States v. Sawicz*, 453 F. Supp. 3d 601, 605 (E.D.N.Y. 2020) (finding that, where a defendant suffered only from hypertension, "the COVID-19 pandemic, combined with [the defendant's] particular vulnerability to complications from COVID-19 . . . constitutes an 'extraordinary and compelling reason' for his release"). Additionally, this Court has, and at least several other courts have, granted compassionate release to defendants with on the basis of hypertension alone. *See, e.g.*, *United States v. Chesney*, No. 3:18-cr-257 (VAB), ECF No. 54, at 6 (D. Conn. May. 20, 2020) ("Ms. Chesney's hypertension places her in a higher risk category for COVID-19 complications, should she contract the virus."); *United States v. Salvagno*, 456 F. Supp. 3d 420, 433, 436 (N.D.N.Y. 2020) (finding on reconsideration that the court did not err in granting compassionate release where the movant's hypertension was "mild" and "controlled," and the movant did not have "pulmonary hypertension," because of the "well-established correlation between hypertension and severe manifestations of COVID-19, and the substantial chorus of experts who have found that there is a causal relationship"); *United States v. Robinson*, No. 3:10-cr-261, 2020 WL 4041436, at *5 (E.D. Va. July 17, 2020) (rejecting the Government's argument that the movant's hypertension was "controlled").

Also relevant to the Court's inquiry is the status of COVID-19 infections at FCI Fort Dix. *See United States v. Colon*, No. 3:97-cr-48 (SRU), 2020 WL 6049215, at *7 (D. Conn. Oct. 12, 2020) (observing that "in determining whether 'extraordinary and compelling reasons' warrant a prisoner's early release, courts routinely consider the status of coronavirus infections at the

particular institution where the defendant is housed," and collecting cases); *see also United States v. Brady*, No. S2 18 Cr. 316 (PAC), 2020 WL 2512100, at *3 (S.D.N.Y. May 15, 2020) (noting that courts often consider as a factor in the compassionate release inquiry "the proliferation and status of infections in the prison facility"); *United States v. Mason*, No. 96 Cr. 126 (JFK), 2021 WL 37576, at *3 (S.D.N.Y. Jan. 5, 2021) (observing with respect to the current outbreak, though ultimately denying compassionate release, that "the increase in infections at FCI Fort Dix may be an important factor in deciding whether extraordinary and compelling reasons exist to modify an inmate's sentence").

As of January 8, 2021, FCI Fort Dix had 789 positive inmate cases, and 23 positive staff cases, at the facility, the most of any federal institution documented on the BOP's website. *See* Bureau of Prisons, *COVID-19 Coronavirus*, https://www.bop.gov/coronavirus (last visited Jan. 8, 2021). As courts have observed as recently as January 5, 2021, FCI Fort Dix has "been unable to control the spread of the virus," though it "has been able to effectively treat the ill and so far, has been able to . . . prevent any death." *United States v. Edison*, No. 12-225 (DWF/FLN), 2021 WL 51031, at *2 (D. Minn. Jan. 6, 2021) (slip op.). Indeed, "[c]ourts have increasingly recognized the significant rise and outbreak of COVID-19 at FCI Fort Dix in support of their determinations of compassionate release." *United States v. Tazewell*, No. 07 Cr. 1035 (RMB), 2021 WL 21980, at *4 (S.D.N.Y. Jan. 3, 2021) (collecting cases, and granting compassionate release to a defendant with hypertension, high blood pressure, hyperlipidemia, and sickle cell trait).

Accordingly, the Court finds that "[t]he prison conditions [at FCI Fort Dix], coupled with [Mr. Hancock's] medial conditions and the pandemic . . . create extraordinary and compelling reasons" for release. *Id.* (internal quotation marks omitted). The Court therefore turns to the Section 3553(a) factors.

**3. Section 3553(a) Factors**

After establishing that extraordinary and compelling reasons exist, "Section 1B1.13 of the Guidelines further provides that a court may reduce a term of imprisonment only if the court determines that '[t]he defendant is not a danger to the safety of any other person or to the community[,]'[ ] and only after considering the factors listed in 18 U.S.C. [§] 3553(a)." *McCarthy*, 453 F. Supp. 3d at 526.

Mr. Hancock argues that "the overriding factor under § 3553(a) that was not present at the time of sentencing is the COVID-19 pandemic and the serious risk it presents to Mr. Hancock's health and safety." Def.'s Mem. at 16. He argues that "[t]he COVID-19 pandemic has made [his] incarceration much more punitive than anticipated," because "inmates live in constant fear of contracting a deadly virus," and "also face lockdown conditions, cold meals, and drastically reduced recreational time, programming, and employment and educational opportunities." *Id*. at 13.

He argues further that his "up-to-date history and characteristics reflect his rehabilitation and support his reduced sentence," *id*. at 16 (emphasis omitted), and that his "accomplishments in prison," age, and "strong release plan" make him unlikely to recidivate, *id*. at 17-18 (emphasis omitted), and these factors, considered alongside his "excellent disciplinary" record in prison, show that he is no longer a danger to the community, *id*. at 20. Specifically, Mr. Hancock argues that over his past nine years in federal prison, he has "been engaged in treatment, counseling, and has taken advantage of multiple classes to better himself upon release." *Id*. at 15. He notes that while in prison, he has completed at least ten classes, including "Financial Education," "Living Well," and "Understanding Recidivism," *id*. at 1, and is currently enrolled in the prison's "Drug Abuse Program," *id*. at 1-2. He also notes that he has already served approximately 110 months in

prison, or, with good time credit, the equivalent of approximately 120 months, or ten years, and would be eligible for home detention on January 29, 2022. *Id.* at 1-2 (citing BOP Records, Ex. B, ECF No. 52 (Dec. 15, 2020) ("BOP Records")).

He proposes release to live with his close friend, Mr. Davis, who Mr. Hancock represents "is committed to helping Mr. Hancock with a job upon his release." *Id.* at 21.

The Government does not dispute whether Mr. Hancock has completed several educational and drug treatment programs while in prison, but instead relies on an April 19, 2018 disciplinary ticket, citing Mr. Hancock for possession of a hazardous tool,[1] to argue that his record is therefore "not without blemish" and that this shows a "continued disrespect of the rules [that] would suggest a greater need to protect the public from further crimes and to deter future criminal conduct." *Id.* at 11-12 (citing *Mumuni*, 946 F.3d at 112). In the Government's view, observations by Judge Bryant at sentencing – such as emphasis on Mr. Hancock's "repeated violation of the law," and her "confirmed belief that a substantial period of incarceration is essential to break th[e] long-standing mentality that . . . resulted in Mr. Hancock's decision" to engage in criminal conduct – indicate that the § 3553(a) factors weigh against release. *Id.* at 13-14 (quoting Sentencing Tr. at 22, 38).

On balance – though the Government raises legitimate concerns – the Court disagrees.

"Courts have found during the coronavirus pandemic that, even where an individual has medical conditions which make him vulnerable to COVID-19, the individual's danger to the community may ultimately outweigh any health concerns and the balance of factors would weigh against release." *United States v. Belle*, 457 F. Supp. 3d 134, 140 (D. Conn. May 5, 2020) (collecting cases). The Court recognizes Mr. Hancock's status as a "career offender," who has

[1] At oral argument, counsel for Mr. Hancock represented that the "hazardous tool" in question was a cell phone. Min. Entry, ECF No. 59.

been convicted of multiple offenses, including both robbery and drug-related crimes, and has served multiple lengthy prison terms. *See* PSR ¶ 85. Because the "nature and circumstances" of Mr. Hancock's crimes, both his crime of conviction and those previously committed, are "undoubtedly serious, [this] may weigh against granting compassionate release." *United States v. De La Cruz*, No. 3:17-cr-150 (VAB), 2020 WL 6193891, at *6 (D. Conn. Oct. 22, 2020) (slip op.) (internal quotation marks omitted) (quoting *United States v. Goins*, No. 11-cr-20376, 2020 WL 3064452, at *6 (E.D. Mich. June 9, 2020)). The Court also acknowledges and considers Mr. Hancock's 2018 disciplinary ticket as part of its determination. *See* Gov't Opp'n at 11-12.

Other factors, however, weigh in favor of release, even if ever so slightly.

On the record before the Court, Mr. Hancock has received only one disciplinary ticket during his over nine years in federal prison. *See* Gov't Opp'n at 11-12 (discussing the April 19, 2018 hearing that resulted in the ticket for possession of a "hazardous tool"). And while the Government classifies this offense as "relatively recent," *id.* at 12, the Court notes that this was nearly two years ago, and followed what apparently were seven years without incident. This relatively blemish-free record, coupled with Mr. Hancock's comprehensive record of prison classes, and participation in a drug rehabilitation program, *see* BOP Records, indicates a "positive behavioral trend." *United States v. Johnson*, No. 3:18-cr-162 (MPS), 2020 WL 4449797, at *4 (D. Conn. Aug. 3, 2020) (slip op.) (granting compassionate release where the defendant had "not had any disciplinary incidents at Wyatt or in BOP custody" despite a lengthy criminal history); *United States v. Pena*, 459 F. Supp. 3d 544, 552 (D. Conn. 2020) (granting compassionate release where the defendant's "conduct since the crime," including "compli[ance] with the requirements of home detention and electronic monitoring" and having "not received a *single* disciplinary infraction while in custody over the past five years," helped "convince the Court . . . that he does not now

pose a danger to the community”).

Mr. Hancock also is eligible for release on January 29, 2022, *see* BOP Records, and therefore may have less than a year of time in incarceration remaining on his sentence, which also weighs in favor of release. *See De La Cruz*, 2020 WL 6193891, at *6 (citing *United States v. Morales*, No. 3:12-cr-164 (JBA), 2020 WL 5369198, at *6 (D. Conn. Sept. 8, 2020) (slip op.) (granting compassionate release to a defendant who had served over half of his prison sentence)).

Mr. Hancock’s presentence report also references a history of substance abuse, *see* PSR ¶¶ 51-54, and notes that various forms of mental health treatment, vocational assistance, and substance abuse treatment would be recommended, *see id.* ¶¶ 59, 86. While not at all preferable, the challenging circumstances of the day (a raging pandemic and serious health risks to an inmate), and the absence of meaningful programming for possibly the duration of the term of incarceration make release the lesser of two undesirable options. The Court takes further comfort in the fact that, that if released to home confinement, Mr. Hancock will be able to receive the mental health counseling, substance abuse treatment and testing, and vocational and/or educational training identified in the PSR and mandated as part of the conditions of supervised release set in his 2012 Judgment. J. at 1-2.

Therefore, “[a]lthough his criminal history [may] suggest[] that there is no guarantee that Mr. [Hancock] will no longer be a danger to any other person or the community, the Court finds that the support [he] will have upon his release and the possible reinstatement of a . . . term of incarceration for a violation of conditions of supervised release, coupled with the threat of the coronavirus, provides a sufficient basis” to warrant release. *United States v. Holmes*, No. 3:19-cr-87 (VAB), 2020 WL 4355118, at *4 (D. Conn. June 3, 2020) (slip op.).

Accordingly, having considered all of these factors as well as those set forth in 18 U.S.C.

§ 3553(a), the Court concludes that they weigh in favor of immediate release.

## IV. CONCLUSION

For the reasons explained above, the motion for compassionate release under 18 U.S.C. § 3582(c)(1)(A) is **GRANTED**. Mr. Hancock's term of imprisonment is reduced to **TIME SERVED**.

It is **ORDERED** that Mr. Hancock be released from Bureau of Prisons custody by **January 13, 2021**, to begin his three-year term of supervised release, to be served on home incarceration at the home of Duane Davis, monitored by technology deemed appropriate by the U.S. Probation Office, for thirty (30) days, after which, if successfully completed, he may be eligible for home detention or curfew, until his release date on January 29, 2022. All other conditions of release from his September 6, 2012 judgment shall remain in effect, including but not limited to participating in inpatient or outpatient substance abuse treatment and testing, mental health treatment, and vocational and/or educational training, as directed by the U.S. Probation Office.

Upon release, Mr. Hancock shall get tested for COVID-19, and then self-quarantine for fourteen (14) days, regardless of the results, unless a positive test result requires another course of treatment, as directed by medical professionals. If the test is positive, he shall promptly report that result to the Bureau of Prisons.

Mr. Hancock is ordered to remain strictly on home incarceration, without work privileges, for thirty (30) days following his release, as to be supervised by the U.S. Probation Office. Following the expiration of the thirty-day time period, Mr. Hancock may move the Court for modification of his conditions of supervised release.

**SO ORDERED** at Bridgeport, Connecticut, this 8th day of January, 2021.

/s/ Victor A. Bolden
Victor A. Bolden
United States District Judge